# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| **IRA RICHARDS** and **SPENCER WHITE**, individually, and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>**PERFORMANCE ONE SECURITY, LLC**, a limited liability company, **HENSON SECURITY SERVICES LLC**, a limited liability company, and **ROBERT HENSON JR.**, an individual,<br><br>        Defendants. | Case No.: 4:22-cv-00701-Y<br><br>Hon.: Terry R. Means |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................................1

II.   RELEVANT FACTS ...............................................................................................................2

   A.   The Parties ......................................................................................................................2

      1.   Defendants ..............................................................................................................2

      2.   Named Plaintiff, Opt-in Plaintiffs, and the Putative FLSA Collective .................2

   B.   Defendants' Employees Performing Security Officer Services Were All Subject to Defendants'
   Uniform and Centralized Training, Pay, and Timekeeping Practices .......................................4

   C.   Defendants' FLSA Violations Were Widespread and Affected All Employees Performing Security
   Services.....................................................................................................................................5

III.  LAW AND ARGUMENT .......................................................................................................7

   A.   The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees ......................7

   B.   Fifth Circuit Courts Have Historically Applied a Lenient Standard When Conditionally Certifying
   FLSA Collective Actions .........................................................................................................9

      1.   Stage One: Conditional Certification..........................................................................9

         a.   Plaintiffs Bear a Light Burden of Proof .........................................................10

         b.   Evidence Typically Accepted to Meet the "Similarly Situated" Test ...................12

         c.   At the Notice Stage, Courts Do Not Evaluate the Merits, Credibility Issues, or Individual
         Defenses ...........................................................................................................13

         d.   Early Notice Protects Employees' Statutes of Limitations .......................................14

      2.   Stage Two: The Certification/Decertification Stage.......................................................16

   C.   The Facts in This Case Are Easily Distinguishable From Those Giving Rise to the Fifth Circuit's
   *Swales* Decision .......................................................................................................................16

   D.   Plaintiffs Satisfy the Lenient Standard for Conditional Certification ..................................19

   E.   Plaintiffs Are Entitled to a List of FLSA Collective Members to Permit Dissemination of Notice
   Pursuant to § 216(b) ...............................................................................................................20

   F.   Notice Should be Sent by U.S. Mail, Email and Text Message.............................................21

   G.   The Court Should Grant a Sixty (60) Day Opt-In Period to Allow Employees to Join This Litigation
   and For Reminder Notice to be Sent Thirty (30) Days Following Notice to Those Who Have Not Yet
   Responded ...............................................................................................................................23

IV.   CONCLUSION......................................................................................................................24

## TABLE OF AUTHORITIES

*Alderoty v. Maxim Healthcare Services, Inc.*
  14-cv-2549, 2015 WL 5675527 (D. Md. Sept. 23, 2015) .......................................................................... 10

*Ali v. Sugarland Petroleum*
  4:09-cv-0170, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009) ..................................................................... 11

*Anderson v. Minacs Grp. (USA) Inc.*
  16-13942, 2017 WL 1856276 (E.D. Mich. May 9, 2017) ........................................................................... 24

*Atkinson v. TeleTech Holdings, Inc.*
  3:14-cv-253, 2015 WL 853234 (S.D. Ohio Feb. 26, 2015) ........................................................................ 24

*Austin v. Onward, LLC*
  161 F.Supp.3d 457 (S.D. Tex. 2015) ........................................................................................................ 16

*Barnes v. Abandonment Consulting Services, LLC*
  4:12-cv-01399, 2013 WL 3884198 (S.D. Tex. July 26, 2013) ..................................................................... 8

*Beattie et al v. TTEC Healthcare Solutions, Inc., et al*
  18-cv-03098-RM-NRN, 2019 WL 2866559 (D. Colo. July 3, 2019) ......................................................... 25

*Blake v. Hewlett-Packard Co.*
  4:11-cv-592, 2013 WL 3753965 (S.D. Tex. July 11, 2013) ............................................................... 10, 18

*Branson v. All. Coal*
  4:19-cv-00155-JHM, 2021 WL 1550571 (W.D. Ky. Apr. 20, 2021) ........................................................ 22

*Brasfield v. Source Broadband Servs., LLC,*
  257 F.R.D. 641 (W.D. Tenn. 2009) ......................................................................................................... 17

*Braunstein v. E. Photographic Laboratories, Inc.*
  600 F.2d 335 (2d Cir. 1978) ....................................................................................................................... 9

*Calvillo v. Bull Rogers, Inc.*
  267 F. Supp. 3d 1307 (D.N.M. 2017) ....................................................................................................... 27

*Cervantez v. TDT Consulting, LLC*
  3:18-cv-2547-S-BN, 2019 WL 3948355 (N.D. Tex. July 22, 2019) ......................................................... 27

*Comer v. Wal-Mart Stores, Inc.*
  454 F.3d 544 (6th Cir. 2006) .................................................................................................................... 11

*Cooper v. E. Coast Assemblers, Inc.*
  12-80995-CIV, 2013 WL 308880 (S.D. Fla. Jan. 25, 2013) ..................................................................... 26

*Defrese-Reese v. Healthy Minds, Inc.*
  CV 18-1134, 2018 WL 6928920 (W.D. La. Dec. 19, 2018) ..................................................................... 27

*Dickensheets v. Arc Marine, LLC*
  440 F.Supp.3d 670 (S.D. Tex. 2020) ....................................................................................................... 28

*Dreyer v. Baker Hughes Oilfield Operations, Inc.*
  H-08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008) ....................................................................... 13

*Dufrene v. Browning-Ferris, Inc.*
  207 F.3d 264 (5th Cir. 2000) ............................................................................................. 8

*Dyson v. Stuart Petroleum Testers, Inc.*
  308 F.R.D. 510 (W.D. Tex. 2015) ............................................................................... 15, 26

*Esparza v. C&J Energy Servs., Inc.*
  5:15-cv-850-DAE, 2016 WL 1737147 (W.D. Tex. May 2, 2016) ....................................... 12

*Evans v. Caregivers, Inc.*
  3:17-CV-0402, 2017 WL 2212977 (M.D. Tenn. May 19, 2017) ....................................... 26

*Falcon v. Starbucks Corp.*
  580 F. Supp. 2d 528 (S.D. Tex. 2008) ............................................................................ 14

*Field v. Anadarko Petroleum Corp.*
  4:20-cv-00575, 2020 WL 6075633 (S.D. Tex. Oct. 15, 2020) ......................................... 17

*Foster v. Sitel Operating Corp.*
  3:19-CV-00148, 2020 WL 1640427 (M.D. Tenn. Apr. 2, 2020) ....................................... 16

*Freeman v. Progress Residential Prop. Manager, LLC*
  3:16-cv-00356, 2018 WL 1609577 (S.D. Tex. Apr. 3, 2018) ..................................... 10, 13

*Gaffers v. Kelly Servs.*
  203 F. Supp. 3d 829 (E.D. Mich. Aug. 24, 2016) ..................................................... 24, 25

*Gaffers v. Kelly Servs.*, Inc.
  16-cv-10128, 2016 WL 8919156 (E.D. Mich. Oct. 13, 2016) ......................................... 18

*Goss v. Tyler Traditions, Inc.*
  6:18-cv-423-JDK, 2019 WL 4935290 (E.D. Tex. July 22, 2019) ..................................... 27

*Green v. Plantation of La., LLC*
  2:10-0364, 2010 WL 5256354 (W.D. La. Nov. 24, 2010) ............................................... 12

*Halleen v. Belk, Inc.*
  4:16-cv-00055, 2016 WL 5118646 (E.D. Tex. Sept. 21, 2016) ....................................... 10

*Heckler v. DK Funding, LLC*
  502 F.Supp.2d 777 (N.D. Ill. 2007) ................................................................................ 13

*Heeg v. Adams Harris, Inc.*
  907 F.Supp.2d 856 (S.D. Tex. 2012) .............................................................................. 13

*Hoffman-La Roche v. Sperling*
  493 U.S. 165 (1989) ................................................................................................. Passim

*Holmes v. Kelly Servs. USA, LLC*
  16-cv-13164, 2017 WL 1077987 (E.D. Mich. Mar. 22, 2017) ..................................... 9, 19

*Houston v. URS Corp.*
  591 F. Supp. 2d 827 (E.D. Va. 2008) .............................................................................. 18

*In re Albertsons*
  21-2577, 2021 WL 4028428 (7th Cir. 2021) ................................................................... 21

*Irvine v. Destination Wild Dunes Mgmt.*
132 F. Supp. 3d 707 (D.S.C. 2015) ........................................................................................... 27

*Jones v. Cretic Energy Svcs., LLC,*
149 F. Supp. 3d 761 (S.D. Tex. 2015) ................................................................................ 13, 26

*Keeton v. Found. Energy Mgmt., LLC*
3:18-cv-01876-G, 2020 WL 487498 (N.D. Tex. Jan. 30, 2020) ............................................... 14

*Kelley v. Alpine Site Services, Inc.*
4:19-cv-01152, 2020 WL 1659926 (S.D. Tex. Mar. 31, 2020) ......................................... *Passim*

*Kitterman v. Wood Group PSN, Inc.*
2:19-cv-233, 2020 WL 10897725 (S.D. Tex. July 24, 2020) ............................................. 24, 26

*LaChapelle v. Owens–Illinois, Inc.*
513 F.2d 286 (5th Cir. 1975) .................................................................................................. 15

*Lay v. Gold's Gym Int'l, Inc.*
12-cv-754-DAE, 2013 WL 5595956 (W.D. Tex. Oct. 4, 2013) ................................................ 16

*Learing v. Anthem Companies, Inc.*
21-cv-2283 (KMM/JFD), 2022 WL 594378 (D. Minn. Feb. 28, 2022) ...................................... 22

*Lee v. Metrocare Servs.*
980 F. Supp. 2d 754 (N.D. Tex. 2013) .................................................................................... 24

*Leon v. Diversified Concrete LLC*
15-6301, 2016 WL 2825073 (E.D. La. May 13, 2016) ............................................................. 25

*Lopez v. Bird Elec. Enters., LLC*
MO:18-cv-0231-DC-RCG, 2019 WL 4087578 (W.D. Tex. June 28, 2019) ................................ 27

*Luvianos v. Gratis Cellular, Inc.*
2012 WL 6737498 (S.D. Tex. Dec.10, 2012) .......................................................................... 13

*Lynch v. United Servs. Auto. Ass'n*
491 F. Supp. 2d 357 (S.D.N.Y. 2007) ..................................................................................... 10

*Mazariegos v. Pan 4 Am., LLC*
DLB-20-2275, 2021 WL 5015751 (D. Md. Oct. 28, 2021) ................................................. 11, 22

*McCoy v. Elkhart Products Corp.*
5:20-cv-05176, 2021 WL 510626 (W.D. Ark. Feb. 11, 2021) ............................................ 11, 22

*Miller v. MV Transp., Inc.*
331 F.R.D. 104 (W.D. Tex. 2019) ....................................................................................... 8, 17

*Miranda v. Mahard Egg Farm, Inc.*
4:15-cv-406, 2016 WL 1704861 (E.D. Tex. Apr. 28, 2016) ..................................................... 11

*Mondeck v. LineQuest, LLC*
MO:19-cv-00221-DC-RCG, 2020 WL 6379329 (W.D. Tex. Aug. 21, 2020) ............................. 15

*Mooney v. Aramco Servs. Co.*
54 F.3d 1207 (5th Cir. 1995) .......................................................................................... *Passim*

*Moore v. Maverick Natural Resources, LLC*
  H-20-591, 2020 WL 6431901 (S.D. Tex. Oct. 15, 2020) .......................................................... 14

*Morgan v. Family Dollar Stores, Inc.*
  551 F.3d 1233 (11th Cir. 2008) ...................................................................................................... 11

*Nieddu v. Lifetime Fitness, Inc.*
  977 F. Supp. 2d 686 (S.D. Tex. 2013) ................................................................................... 12, 16

*O'Brien v. Christian Faith Publishing*
  3:18-cv-00024, 2019 WL 6037004 (M.D. Tenn. Nov. 14, 2019).......................................... 16

*Pacheco v. Aldeeb*
  5:14–cv–121–DAE, 2015 WL 1509570 (W.D. Tex. Mar. 31, 2015).......................................... 15

*Pack v. Investools, Inc.*
  09-cv-1042, 2011 WL 3651135 (D. Utah Aug. 18, 2011) ........................................................ 9

*Page v. Crescent Directional Drilling, L.P.*
  5:15-cv-193-RP, 2015 WL 12660425 (W.D. Tex. Dec. 10, 2015) ........................................ 28

*Peterson v. Nelnet Diversified Sols., LLC*
  15 F.4th 1033 (10th Cir. 2021) ...................................................................................................... 23

*Piazza v. Albertsons, LP*
  20-cv-03187, 2021 WL 365771,n.6 (N.D. Ill. Feb. 3, 2021) ................................................ 22

*Pliego v. Los Arcos Mexican Restaurants, Inc.*
  14-cv-01686, 2015 WL 4600726 (D. Colo. July 31, 2015) .................................................... 16

*Pogue v. Chisholm Energy Operating, LLC*
  2:20-cv-00580-KWR-KK, 2021 WL 5861184 (D.N.M. Dec. 10, 2021).............................. 27, 28

*Qazi v. Stage Stores, Inc.*
  4:18-cv-780, 2019 WL 2523564 (S.D. Tex. June 18, 2019) .................................................. 27

*Rapp v. HV Occupational Health Advisors of Am., LLC*
  20-cv-02043-PAB-KMT, 2021 WL 4426956 (D. Colo. Sept. 27, 2021) .............................. 26

*Ratliff v. Pason Sys. USA Corp.*
  196 F.Supp.3d 699 (S.D. Tex. 2016) .......................................................................................... 25

*Reab v. Elec. Arts, Inc.*
  214 F.R.D. 623 (D. Colo. 2002) .................................................................................................... 13

*Reid v. Timeless Rests., Inc.*
  3:09-cv-2481-L, 2010 WL 4627873 (N.D. Tex. Nov. 5, 2010) .............................................. 15

*Reyes v. Quality Logging, Inc.*
  52 F.Supp.3d 849 (S.D. Tex. 2014) .............................................................................................. 25

*Robertson v. REP Processing, LLC*
  19-cv-02910-PAB-NYW, 2021 WL 4255027 (D. Colo. Sept. 16, 2021)............................ 28

*Rosalez Funez v. E.M.S.P., LLC*
  16-1922, 2016 WL 4445828 (E.D. La. Aug. 24, 2016) .......................................................... 26

*Sandifer v. U.S. Steel Corp.*
571 U.S. 220 (2014)...............................................................................................................23

*Sandoz v. Cingular Wireless LLC*
553 F.3d 913 (5th Cir. 2008) ...............................................................................................15

*Santos v. E&R Servs., Inc.*
DLB-20-2737, 2021 WL 6073039 (D. Md. Dec. 23, 2021) ...................................................21

*Sedtal v. Genuine Parts Co.*
1:08-cv-413-TH JURY, 2009 WL 2216593 (E.D. Tex. July 23, 2009) ......................................11

*Senne v. Kansas City Royals Baseball Corp.*
14-cv-00608, 2015 WL 6152476 (N.D. Cal. Oct. 20, 2015)...................................................26

*Serbay v. Dialog Direct, Inc.*
16-12716, 2017 WL 163866 (E.D. Mich. Jan. 17, 2017) .......................................................24

*Shabazz v. Asurion Ins. Serv.*
3:07-0653, 2008 WL 1730318 (M.D. Tenn., Apr. 10, 2008) ..................................................17

*Shaw v. Jaguar Hydrostatic Testing, LLC*
2:15-cv-363, 2017 WL 3866424 (S.D. Tex. Sept. 5, 2017) ...................................................10

*Sidbury v. Dun & Bradstreet Emerging Bus. Corp.*
1:19-cv-865-RP, 2020 WL 7011994 (W.D. Tex. Oct. 13, 2020) .............................................17

*Sperling v. Hoffmann-La Roche, Inc.*
118 F.R.D. 392 (D.N.J. 1988) ...............................................................................................18

*Stier v. Great Plains Nat'l Bank*
4:15-cv-519, 2016 WL 1572194 (E.D. Tex. Apr. 19, 2016) ...................................................11

*Struck v. PNC Bank N.A.*
931 F.Supp.2d 842 (S.D. Ohio 2013)....................................................................................9

*Swales v. KLLM Transp. Servs., L.L.C.*
985 F.3d 430 (5th Cir. 2021) ...................................................................................20, 21, 22

*Taylor v. Pittsburgh Mercy Health Sys.,*
2009 U.S. Dist. LEXIS 40080, *2 (W.D. Pa. May 11, 2009) ..................................................18

*Thomas v. Maximus, Inc*
3:21-cv-498 (DJN), 2022 WL 1482010 (E.D. Va. May 10, 2022) ...........................................22

*Tice v. AOC Senior Home Health Corp.*
826 F.Supp.2d 990 (E.D. Tex. Sept. 30, 2011) ..........................................................11, 12, 14

*Tolentino v. C & J Spec–Rent Servs., Inc.*
716 F.Supp.2d 642 (S.D. Tex.2010) ..............................................................................11, 23

*Tony & Susan Alamo Found. v. Sec'y of Labor*
471 U.S. 290 (1985)..............................................................................................................13

*Torres v. Vitale,*
2020 U.S. Dist. LEXIS 204594, *17 (W.D. Mich. Sept. 30, 2020) .........................................27

*Vargas v. Richardson Trident Co.*
    2010 WL 730155 (S.D. Tex. Feb. 22, 2010) ........................................................................ 25

*Varghese v. JP Morgan Chase & Co.*
    14-cv-1718, 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) ...................................................... 26

*Ware v. AUS, Inc.*
    RDB-16-3909, 2017 WL 1354143 (D. Md. Apr. 13, 2017).................................................... 16

*Watson v. Travis Software Corp.*
    H-07-4101, 2008 WL 5068806 (S.D. Tex. Nov. 21, 2008) ...................................................... 17

*Wedel v. Vaughn Energy Servs., LLC*
    2:15-cv-93, 2015 WL 5920034 (S.D. Tex. Oct. 6, 2015) ........................................................ 12

*Wesley v. Experian Info. Solutions, Inc.*
    4:18-cv-00005, 2018 WL 3105763 (E.D. Tex. June 25, 2018) ...................................... 25, 26, 28

*West v. Phelps Dodge Ref. Corp.*
    EP-07-CA-197-FM, 2009 WL 10700216 (W.D. Tex. Jan. 27, 2009) ......................................... 17

*Wingo*
    2018 WL 6334312......................................................................................................... 28

*Wlotkowski v. Michigan Bell Tel. Co.*
    267 F.R.D. 213 (E.D. Mich. 2010) ...................................................................................... 11

*Zachary v. Cobalt Mortgage, Inc.*
    4:16-cv-00754, 2017 WL 1079374 (E.D. Tex. Mar. 22, 2017).................................... 12, 23, 28

## Statutes

29 U.S.C. §255(a)...........................................................................................................................17

29 U.S.C. § 201...............................................................................................................................1

29 U.S.C. § 207(a)...........................................................................................................................8

29 U.S.C. § 216(b)....................................................................................................................*Passim*

29 U.S.C. §§ 621-634.......................................................................................................................9

## **Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 15

## I. __INTRODUCTION__

Plaintiffs, Ira Richards and Spencer White, individually and on behalf of others similarly situated ("Plaintiffs"), filed this lawsuit against Performance One Security, LLC, Henson Security Services LLC, and Robert Henson, Jr. ("Defendants") challenging their willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). More specifically, Plaintiffs allege that Defendants violated the FLSA by knowingly suffering or permitting Plaintiffs to perform unpaid work before their scheduled shifts but failing to pay these employees all federally mandated overtime compensation.

Under 29 U.S.C. § 216(b), Plaintiffs seek conditional certification of their FLSA claims on behalf of the following employee collective:

> *All current and former employees who performed security officer job duties for Defendants at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment* (the "FLSA Collective").

Congress and the Supreme Court explicitly authorized employees to pursue FLSA claims on a collective basis through the opt-in procedure set forth in 29 U.S.C § 216(b). *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity").

In accordance with these public policies, Plaintiffs hereby move for an order: (1) granting this Motion; (2) approving Plaintiffs' proposed forms of notice (**Exhibits A** and **B**) and authorizing dissemination of the notices to each proposed Collective member by mail, email, and text message; (3) requiring Defendants to identify and produce the names, dates of employment, phone numbers, last known home addresses, and email addresses of all proposed FLSA Collective members in a computer-readable format within fourteen (14) days; (4) appointing the undersigned as counsel for the proposed FLSA Collective; (5) giving proposed Collective members sixty (60) days from the date the notice is mailed to join this case, if they so choose; and

(6) permitting one reminder email to be sent thirty (30) days after notice is issued to anyone who did not respond.

## II.    RELEVANT FACTS

### A.    The Parties

#### 1.    Defendants

Defendants are in the security services business, "provid[ing] the highest level of protection for [] business[es], assets, and most importantly [the business'] personnel." (Doc. 1, Collective and Class Action Complaint, ¶ 2, PageID 1-2). These security services are offered for residential and commercial properties, executive travel protection, crisis responses, general surveillance, events, and more. (*Id.*) Defendants "aim to create the safest environments bringing [their] passion and skills to every company and individual in need." (*Id.* at PageID 2).

In order to provide the aforementioned service, Defendants employ hourly, but sometimes salaried, non-exempt employees to provide security officer duties in the state of Texas. (*Id.* at ¶ 3, PageID 2; **Ex. C**, Richards Dec. at ¶¶ 2-3; **Ex. D**, White Dec. at ¶¶ 2-3, 5; **Ex. E**, Brown Dec. at ¶¶ 2-3). These employees hold job titles that include, but are not limited to, security officer, lieutenant, operations manager, and staff sergeant. (Doc. 1, ¶ 3, PageID 2; **Ex. C**, Richards Dec. at ¶ 4; **Ex. D**, White Dec. at ¶ 4; **Ex. E**, Brown Dec. at ¶ 4). Defendants are "committed to continuous improvement while investing, training and developing [their] staff to ensure they are able to meet any service request." (Doc. 1, ¶ 3, PageID 2).

Upon information and belief, Defendants employed hundreds of employees – including Plaintiffs – within the past three (3) years to provide security services. (Doc. 1, ¶ 55, PageID 11).

#### 2.    Named Plaintiff, Opt-in Plaintiffs, and the Putative FLSA Collective

Named Plaintiff, Ira Richards, worked for Defendants as an hourly, non-exempt security officer from approximately October 2001 through August 26, 2022, and most recently earned a base hourly rate of $18.00. (*Id.* at ¶ 15, PageID 4; **Ex. C**, Richards Dec. at ¶¶ 2, 5). Plaintiff Richards filed his consent form to join this

collective action. (Doc. 1-1). Named Plaintiff, Spencer White, worked for Defendants as an hourly, non-exempt security officer from approximately September 2019 through June 2021. (Doc. 1, ¶ 16, PageID 4; **Ex. D**, White Dec. at ¶ 2). From approximately June 2021 through December 31, 2021, Plaintiff White continued to perform security officer duties in his role as a lieutenant. (*Id*.). Defendants compensated Plaintiff White for his security officer responsibilities through the payment of an hourly rate, most recently $20.00 per hour. (Doc. 1, ¶ 16, PageID 4; **Ex. D**, White Dec. at ¶ 5). Plaintiff White filed his consent form to join this collective action. (Doc. 1-2).

Opt-In Plaintiff, Anthony Brown, worked for Defendants as an hourly, non-exempt operations manager from approximately January 2021 through March 2021, and as a staff sergeant from approximately March 2021 through April 2021. (**Ex. E**, Brown Dec. at ¶ 2). Defendants compensated Mr. Brown for his security officer responsibilities through the payment of an hourly rate, most recently $19.00 per hour. (*Id*. at ¶ 5). Mr. Brown filed his consent form to join this collective action. (Doc. 11-1).

All Plaintiffs, and the putative Collective members, worked for Defendants in the Texas area where they endured similar working conditions and pay practices. Defendants' employees performing security officer services routinely worked more than 40 hours in a given workweek. (Doc. 1 at ¶ 25, PageID 6; **Ex. C**, Richards Dec. at ¶ 5; **Ex. D**, White Dec. at ¶¶ 5-6; **Ex. E**, Brown Dec. at ¶ 5). For instance, for the pay periods of December 12 – 18, 2021 and January 16 – 22, 2022, Plaintiff Richards worked 45 and 48 hours, respectively. (Doc. 1, ¶ 25, PageID 9; *see also* Doc. 1-3 & Doc. 1-5). As explained in more detail below, Plaintiffs and Defendants' other employees performing security services were paid at their regular hourly (non-overtime) rate for all hours worked, regardless of whether the hours worked were in excess of 40 each week. (Doc. 1, ¶ 29, PageID 6; **Ex. C**, Richards Dec. at ¶¶ 13, 17; **Ex. D**, White Dec. at ¶¶ 16, 18; **Ex. E**, Brown Dec. at ¶¶ 14-15). Plaintiffs and the proposed FLSA Collective held and performed similar job duties, which generally included providing protection to, and created a safe environment for, Defendants' various

3

customers, regardless of their field assignment (*Id*. at ¶ 28, PageID 6; **Ex. C**, Richards Dec. at ¶¶ 6-7; **Ex. D**, White Dec. at ¶¶ 7, 9; **Ex. E**, Brown Dec. at ¶¶ 6, 8).

**B.**    **Defendants' Employees Performing Security Officer Services Were All Subject to Defendants' Uniform and Centralized Training, Pay, and Timekeeping Practices**

Once hired, Defendants provided their employees carrying out security services with continued training and development to ensure they were able to meet all service requests. (*Id*. at ¶ 27, PageID 6; **Ex. C**, Richards Dec. at ¶ 8; **Ex. D**, White Dec. at ¶¶ 10-11; **Ex. E**, Brown Dec. at ¶ 9). Defendants paid these employees on a weekly basis and provided them with weekly schedules outlining their field assignments. (Doc. 1, ¶ 27, PageID 6; **Ex. C**, Richards Dec. at ¶¶ 9-10; **Ex. D**, White Dec. at ¶¶ 12-13; **Ex. E**, Brown Dec. at ¶¶ 9-10). Schedules for the upcoming workweek were sent in the preceding workweek via a phone application called Home Base. (**Ex. C**, Richards Dec. at ¶ 10; **Ex. D**, White Dec. at ¶ 13; **Ex. E**, Brown Dec. at ¶ 11). Defendants trained and instructed Plaintiffs and all other employees performing security services to know their schedules and to be ready for work at the start of their shifts. (**Ex. C**, Richards Dec. at ¶ 11; **Ex. D**, White Dec. at ¶ 14; **Ex. E**, Brown Dec. at ¶ 12).

Regarding timekeeping, Plaintiffs and other similarly situated employees were trained and instructed to track their hours worked using Defendants' timekeeping system through Home Base. (**Ex. C**, Richards Dec. at ¶ 12; **Ex. D**, White Dec. at ¶ 15; **Ex. E**, Brown Dec. at ¶ 13). More specifically, they were trained to clock in at the beginning of each shift and clock out at the end of each shift. (**Ex. C**, Richards Dec. at ¶ 12; **Ex. D**, White Dec. at ¶ 15; **Ex. E**, Brown Dec. at ¶ 13). The Home Base application Plaintiffs and other similarly situated employees used reminded them to clock in and out for their shifts each day. (**Ex. C**, Richards Dec. at ¶ 12; **Ex. D**, White Dec. at ¶ 15; **Ex. E**, Brown Dec. at ¶ 13). For example, the application provided a one-hour notice that a scheduled shift was about to start. (**Ex. C**, Richards Dec. at ¶ 12; **Ex. D**, White Dec. at ¶ 15; **Ex. E**, Brown Dec. at ¶ 13). If Plaintiffs or other similarly situated employees forgot to clock in, the application asked them 15 minutes into the shift whether they forgot to clock in. (**Ex. C**, Richards Dec. at ¶

4

12; **Ex. D**, White Dec. at ¶ 15; **Ex. E**, Brown Dec. at ¶ 13). Similarly, the application asked them 15 minutes after the end of their scheduled shift if they forgot to clock out and, if so, prompt them to type in their clock-out time for payroll processing. (**Ex. C**, Richards Dec. at ¶ 12; **Ex. D**, White Dec. at ¶ 15; **Ex. E**, Brown Dec. at ¶ 13).

Defendants' unlawful pay and timekeeping practices, as well as the nature of Plaintiffs' job duties as employees performing security services, were substantially the same irrespective of the employees' field location. (Doc. 1, PageID 6-9; *See generally*, **Ex. C**, Richards Dec.; **Ex. D**, White Dec.; **Ex. E**, Brown Dec.).

### C. Defendants' FLSA Violations Were Widespread and Affected All Employees Performing Security Services

Defendants' unlawful pay practices were widespread and occurred among all current and former employees working for Defendants in the Texas area. (Doc. 1, PageID 6-9; **Ex. C**, Richards Dec. at ¶¶ 13-21; **Ex. D**, White Dec. at ¶¶ 16-22; **Ex. E**, Brown Dec. at ¶¶ 14-20.). In Plaintiffs' experiences working for Defendants, they gained direct personal knowledge that all of Defendants' employees performing security services faced the same pay practices and procedures and that all of the aforementioned employees lost overtime wages because Defendants failed to pay them properly. (*See generally*, **Ex. C**, Richards Dec.; **Ex. D**, White Dec.; **Ex. E**, Brown Dec.). For example, in Plaintiff White's role as lieutenant and Opt-in Plaintiff Brown's role as operations manager, White and Brown were responsible for, *inter alia*, creating schedules for security officers and employees tasked with performing security services. (**Ex. D**, White Dec. at ¶ 8; **Ex. E**, Brown Dec. at ¶ 6). Plaintiffs White and Brown scheduled Defendants' employees to perform security services for 40 to 60 hours or more per week, but from their personal knowledge and observation, those individuals were not paid overtime for all hours worked in excess of 40 in a workweek. (**Ex. D**, White Dec. at ¶¶ 16, 18; **Ex. E**, Brown Dec. at ¶¶14-16).

Plaintiff White confronted Defendant, Robert Henson, Jr., about not being paid overtime for hours worked in excess of 40 in a workweek when he provided security services. (Doc. 1, ¶ 32, PageID 7; **Ex. D**,

White Dec. at ¶ 17). Defendant Henson, Jr. would at times become angered by the question and state, "We don't have enough money for that" or "I'm paying more than industry standard for these guards, they're fine." (*Id*.) Other times, when Plaintiff White asked whether security officers were paid overtime, Defendant Henson Jr. bluntly said "No" or avoided the question in its entirety. (*Id*.).

Opt-in Plaintiff Brown also challenged Defendant Robert Henson, Jr. on his refusal to pay overtime. (**Ex. E**, Brown Dec. at ¶ 15). Defendant Henson, Jr. told him, "I'm not giving overtime pay because I'm allowing them [employees working security officer services] to work as many hours as they want to be fair." (*Id*). When Brown explained to Defendant Henson, Jr. that the employees were entitled to overtime for hours worked over 40 in a workweek, Defendant Henson, Jr. responded: "If they don't like it, they can go to another company, but that's how I'm going to run it here." (*Id*.).

Plaintiff Richards' wife was provided similar information when she inquired about Defendants' failure to pay overtime; Chief Lawrence Fuentes advised her of Defendants' "no overtime [*sic*] policy[,]" about which all security officers were allegedly told, and that Defendants' failure to pay overtime was how Defendants were able to pay a higher base hourly rate than other companies. (Doc. 1, ¶ 31, PageID 7; **Ex. C**, Richards Dec. at ¶ 14). Plaintiff Richards also asked Chief Fuentes whether he had signed paperwork regarding Defendants' no overtime policy ("No Overtime Policy") and Chief Fuentes responded, "No u guys dident [*sic*] have too [*sic*] the ones before did have too [*sic*]. It is announced on our company app site and addressed to all officers." (**Ex. C**, Richards Dec. at ¶ 15). Mr. Richards then sent Chief Fuentes a screenshot of the U.S. Department of Labor Wage and Hour Division's Overtime Pay requirements. (*Id*.)

As explained above, Plaintiffs and all similarly situated employees all performed the same, similar, or overlapping job duties, were subject to the same or similar pay practices, timekeeping procedures, attendance policies, and were not paid overtime for all hours worked in excess of 40 in a workweek, and Plaintiffs' sworn declarations provide *prima facie* evidence that Court-authorized notice is warranted. Simply put, Defendants subjected all of their employees performing security services to the same or similar policies

and practices which Plaintiffs allege violated the FLSA, and in light of the multitude of violations articulated above, and the detailed declarations submitted herewith, Plaintiffs easily satisfy the lenient burden applicable to pre-discovery conditional certification motions in this Circuit (and this Court).

## III.    LAW AND ARGUMENT

### A.    The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees

The FLSA requires employers to pay employees overtime compensation at 1.5 times the regular rates at which they are employed for hours worked in excess of 40 hours in a week. 29 U.S.C. § 207(a); *Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 267 (5th Cir. 2000). To enforce this provision, an aggrieved employee may bring a collective action on his own behalf, and on behalf of those who are similarly situated and who opt in by giving consent in writing to become a party plaintiff. 29 U.S.C. § 216(b).

For the action to proceed as a collective action, the court must be satisfied that all the plaintiffs are "similarly situated." *See* 29 U.S.C. § 216(b); *Miller v. MV Transp., Inc.*, 331 F.R.D. 104, 109 (W.D. Tex. 2019). Unfortunately, the FLSA does not define "similarly situated," or provide guidance for its interpretation. *Barnes v. Abandonment Consulting Services, LLC, Civ. A.* No. 4:12–cv–01399, 2013 WL 3884198, at *2 (S.D. Tex. July 26, 2013).

The FLSA is additionally silent on how notification should be given to other similarly situated persons in § 216(b) collective actions. *Braunstein v. E. Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) was the most notable early Circuit Court decision approving a district court order authorizing written notice to similarly situated persons in a § 216(b) lawsuit. *Braunstein* was endorsed by *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989), holding that courts have the discretion to implement the collective action procedure by facilitating notice to potential class members. Commenting favorably upon collective actions, the Court noted:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity.

These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id*. at 170 (interpreting the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, which explicitly incorporates the collective action provisions of the FLSA). Until notice is issued, potential plaintiffs might not become aware of the lawsuit and therefore not have the opportunity to join the case, which could result in significant prejudice to potential members of the class. *See Holmes v. Kelly Servs. USA, LLC*, No. 16-cv-13164, 2017 WL 1077987, *3 (E.D. Mich. Mar. 22, 2017); *Struck v. PNC Bank N.A.*, 931 F.Supp.2d 842, 848 (S.D. Ohio 2013); *Pack v. Investools, Inc.*, No. 09-cv-1042, 2011 WL 3651135, at *3 (D. Utah Aug. 18, 2011).

Because the statute of limitations on an FLSA claim is not tolled on an individual employee's claim until that employee opts into the case, early notice to similarly situated individuals, even before a final determination on class certification, is necessary to allow them to timely assert their claims. *See Blake v. Hewlett-Packard Co.*, No. 4:11–CV–592, 2013 WL 3753965, at *4 (S.D. Tex. July 11, 2013) (noting "[t]he importance of the temporal aspect [of the conditional certification evidentiary distinction] is that the statute of limitations is not tolled for the putative class as a whole when the complaint is filed, but instead continues to run for each individual employee until he or she consents to become a party plaintiff" and that "conditional certification and notice early in the litigation allows potential plaintiffs the opportunity to toll the limitations period as to their individual claims by making them aware of the pendency of the action and their right to opt in."); *Shaw v. Jaguar Hydrostatic Testing, LLC*, No. 2:15-cv-363, 2017 WL 3866424, at *3 (S.D. Tex. Sept. 5, 2017) ("[T]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court. District courts have discretion in deciding whether to order notice to potential plaintiffs.") (internal quotation marks and citations omitted); *see also Alderoty v. Maxim Healthcare Services, Inc.*, No. 14-cv-2549, 2015 WL 5675527, at *5 (D. Md. Sept. 23, 2015); *see also Lynch v. United Servs. Auto. Ass'n*,

8

491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) (noting that early notice "protects plaintiffs' claims from expiring under the statute of limitations").

**B.    Fifth Circuit Courts Have Historically Applied a Lenient Standard When Conditionally Certifying FLSA Collective Actions**

Federal courts, including those within this Circuit, have historically followed a two-stage certification process for determining whether all plaintiffs are similarly situated. *See, e.g., Freeman v. Progress Residential Prop. Manager, LLC*, No. 3:16-cv-00356, 2018 WL 1609577, at *2 (S.D. Tex. Apr. 3, 2018); *Halleen v. Belk, Inc.*, No. 4:16-cv-00055, 2016 WL 5118646, at *2 (E.D. Tex. Sept. 21, 2016); *Miranda v. Mahard Egg Farm, Inc.*, No. 4:15-cv-406, 2016 WL 1704861, at *1 (E.D. Tex. Apr. 28, 2016); *Stier v. Great Plains Nat'l Bank*, No. 4:15-cv-519, 2016 WL 1572194, at *1 (E.D. Tex. Apr. 19, 2016); *Tice v. AOC Senior Home Health Corp.*, 826 F.Supp.2d 990, 994 (E.D. Tex. Sept. 30, 2011); *Tolentino v. C & J Spec–Rent Servs., Inc.,* 716 F.Supp.2d 642, 646 (S.D. Tex.2010); *Ali v. Sugarland Petroleum,* No. 4:09–cv–0170, 2009 WL 5173508, at *2 (S.D. Tex. Dec. 22, 2009); *see also Mazariegos v. Pan 4 Am., LLC*, No.: DLB-20-2275, 2021 WL 5015751, at *4 (D. Md. Oct. 28, 2021) ("This Court declines the defendants' invitation to depart from the two-stage certification process"); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010); *McCoy v. Elkhart Products Corp.*, No. 5:20-cv-05176, 2021 WL 510626, *2 (W.D. Ark. Feb. 11, 2021) ("The Court will follow the historical, two-stage approach, which has proven to be an efficient means of resolution of this issue."); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008) ("we have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase").

**1.    *Stage One: Conditional Certification***

The first stage, often called the "notice" or "conditional certification" stage, takes place before or at the beginning of discovery and its purpose is to provide notice to potential plaintiffs and present them with an opportunity to opt into the case. *Sedtal v. Genuine Parts Co.*, No. 1:08–cv–413–TH JURY, 2009 WL 2216593,

at *3 (E.D. Tex. July 23, 2009).This motion was filed pre-discovery. Accordingly, this matter is currently at the "notice" or "conditional certification" stage.

Importantly, the Court's grant of conditional certification is not a dispositive decision. *Esparza v. C&J Energy Servs., Inc.*, No. 5:15–cv–850-DAE, 2016 WL 1737147, at *1 (W.D. Tex. May 2, 2016) (noting conditional certification involves non-dispositive issues); *Wedel v. Vaughn Energy Servs., LLC*, No 2:15–cv–93, 2015 WL 5920034, at *1 (S.D. Tex. Oct. 6, 2015) (same). At this stage, the plaintiff only needs to show that a group of "similarly situated" employees exists. 29 U.S.C. § 216(b); *Tice*, 826 F.Supp.2d at 995. Early notice also serves the FLSA's broad remedial purposes and § 216(b)'s specific grant of collective rights to employees. *Green v. Plantation of La., LLC*, No. 2:10–0364, 2010 WL 5256354, at *6 (W.D. La. Nov. 24, 2010) ("Thus, courts have endorsed the sending of notice early in the proceeding as a means of facilitating the FSLA's broad remedial purpose and promoting efficient case management.").

### a.  *Plaintiffs Bear a Light Burden of Proof*

Because conditional certification is a procedural function, Plaintiffs' evidentiary burden is modest, "and typically results in 'conditional certification' of a representative class." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995); *Kelley v. Alpine Site Services, Inc.*, No. 4:19–CV–01152, 2020 WL 1659926, at *2 (S.D. Tex. Mar. 31, 2020). The evidentiary standard is low because at this stage in the suit, discovery has not occurred, and the purpose is merely to determine whether similarly situated plaintiffs do in fact exist. *See Zachary v. Cobalt Mortgage, Inc.*, No. 4:16-CV-00754, 2017 WL 1079374, at *4 (E.D. Tex. Mar. 22, 2017); *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013); *Tice*, 826 F.Supp.2d at 994.

Some courts within this Circuit have required three elements to be met for an action to be conditionally certified as a collective action: (1) there must be "a reasonable basis for crediting the assertion that aggrieved individuals exist"; (2) those aggrieved individuals must be similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the

lawsuit. *See e.g.*, *Heeg v. Adams Harris, Inc.*, 907 F.Supp.2d 856, 861 (S.D. Tex. 2012). Other courts within this Circuit have rejected the third element as non-statutory. *See, e.g.*, *Jones v. Cretic Energy Svcs., LLC*, 149 F. Supp. 3d 761, 768 (S.D. Tex. 2015) ("Because the third element is not statutorily required and because requiring evidence of putative class members who are willing to join a collective action before an appropriate class has even been defined conflicts with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes… the court agrees that plaintiff need not present evidence of the third element at this stage of the litigation") (internal citations omitted); *Luvianos v. Gratis Cellular, Inc.*, 2012 WL 6737498, at *5 (S.D. Tex. Dec.10, 2012) (finding that "[p]laintiffs need not present evidence of the third element at this stage of the certification process" because the element has not been required by any higher court, it is not a statutory requirement, and the FLSA is required to be "liberally construed to effect its purposes"); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H–08–1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (rejecting argument that FLSA collective action can be certified only if the plaintiff proves that others are interested in opting in to the lawsuit); *see also Kelley*, 2020 WL 1659926, at *2 (quoting *Freeman*, 2018 WL 1609577, at *2); *see also Heckler v. DK Funding, LLC,* 502 F.Supp.2d 777, 780 (N.D. Ill. 2007); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002). "Moreover, such a requirement is at odds with the Supreme Court's command that the FLSA be liberally construed to effect its purposes." *Dreyer*, 2008 WL 5204149, at *3 (quoting *See Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296 (1985)).

Under the first element, "the plaintiffs need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Kelley*, 2020 WL 1659926, at *2. Under the second element, the plaintiffs must make a modest factual showing that they are similarly situated to the other employees named in the proposed class. *Id*. at *3. This does not mean that their positions must be identical, as "the court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated [under the FLSA]." *Tice*, 826 F. Supp. 2d at 996; *see also Moore v. Maverick Natural Resources, LLC*, No. H-20-591, 2020 WL 6431901, at *2 (S.D.

11

Tex. Oct. 15, 2020); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) ("Plaintiffs must only be similarly— not identically—situated."). Rather, "the relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." *Tice*, 826 F. Supp. 2d at 996. "[P]laintiff[s] need only show that their positions are similar to the potential plaintiffs." *Id.* at 995. Thus, the court must determine whether the proposed class members "were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214, n.8. As one court observed in summarizing the similarly situated standard: "[f]or the class representative to be considered similarly situated to the potential opt-in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Keeton v. Found. Energy Mgmt., LLC*, No. 3:18-cv-01876-G, 2020 WL 487498, at *3 (N.D. Tex. Jan. 30, 2020).

Courts should also be careful not to confuse the rigorous analysis required for class certification under Fed. R. Civ. P. 23 with the requirements of § 216(b), because these rules and the policies behind them are much different. *See LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288–89 (5th Cir. 1975), and *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916–18 (5th Cir. 2008) discussing the fundamental differences between Fed. R. Civ. P. 23 class actions and FLSA collective actions.

### b. Evidence Typically Accepted to Meet the "Similarly Situated" Test

At the "notice" or "conditional certification" stage and in determining whether putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class, courts usually base the decision on "the pleadings and any affidavits [that] have been submitted." *Mooney*, 54 F.3d at 1214; *see also Kelley*, 2020 WL 1659926, at *2.

Indeed, Courts have found one or two employee affidavits, coupled with the allegations in a complaint, sufficient to satisfy the "substantial allegations" requirement for conditional certification. *See e.g., Mondeck v. LineQuest, LLC*, MO:19-cv-00221-DC-RCG, 2020 WL 6379329, at *2 (W.D. Tex. Aug. 21, 2020) (granting conditional certification on the basis of the pleadings and the declarations of the plaintiff and one

12

opt-in plaintiff); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 514 (W.D. Tex. 2015); *Pacheco v. Aldeeb*, No. 5:14–cv–121–DAE, 2015 WL 1509570, at *8 (W.D. Tex. Mar. 31, 2015) (two declarations attesting "many" current and former employees would join lawsuit found to be a sufficient basis for conditional certification); *Reid v. Timeless Rests., Inc.*, 3:09-cv-2481-L, 2010 WL 4627873, at *3 (N.D. Tex. Nov. 5, 2010) (finding "evidence from two individuals who experienced similar employment pay practices ... and [who] stated that they are aware of others who also experienced them" sufficient to support motion for conditional certification); *Ware v. AUS, Inc*., No. RDB-16-3909, 2017 WL 1354143, at *3 (D. Md. Apr. 13, 2017) ([t]hrough two sworn affidavits, Plaintiff ... made the requisite 'modest factual showing' that there exists a similarly situated class of potential plaintiffs who were subject to a common policy, scheme, or plan which may have violated the FLSA."); *O'Brien v. Christian Faith Publishing*, No. 3:18-cv-00024, 2019 WL 6037004, at *3-4 (M.D. Tenn. Nov. 14, 2019) (granting conditional certification of literary agents based on the plaintiff's affidavit, "the affidavit of one other literary agent, training and compensation documents from the company, and a series of emails supporting the inference that the potential class members are similarly situated."); *Pliego v. Los Arcos Mexican Restaurants, Inc.*, No. 14-cv-01686, 2015 WL 4600726, at *2 (D. Colo. July 31, 2015) (granting conditional certification of employees of multiple restaurant locations based "solely [on] the allegations of the complaint and the affidavit of [the] plaintiff").

Once a court conditionally certifies an action, it "may exercise its broad discretion under [the] FLSA to facilitate notice to potential collective action plaintiffs" *Foster v. Sitel Operating Corp.*, 3:19-CV-00148, 2020 WL 1640427, at *10 (M.D. Tenn. Apr. 2, 2020); *see also Austin v. Onward, LLC*, 161 F.Supp.3d 457, 461 (S.D. Tex. 2015).

### c. At the Notice Stage, Courts Do Not Evaluate the Merits, Credibility Issues, or Individual Defenses

At no point during the notice stage of conditional certification should a court look to the merits of the lawsuit's allegations. *See Nieddu*, 977 F. Supp. 2d at 690 ("Usually at the notice stage, because discovery

has not yet occurred, courts do not review the underlying merits of the action in deciding whether to conditionally certify the class."). Nor should the court resolve factual disputes, make credibility determinations, or consider merits-based defenses. *See Lay v. Gold's Gym Int'l, Inc.*, SA-12-cv-754-DAE, 2013 WL 5595956, at *5 (W.D. Tex. Oct. 4, 2013) (quoting *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)); *see also Field v. Anadarko Petroleum Corp.*, No. 4:20-cv-00575, 2020 WL 6075633, at *2 (S.D. Tex. Oct. 15, 2020). Indeed, at this stage, "courts must be scrupulous to respect judicial neutrality," and must therefore "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Miller*, 331 F.R.D. at 110 (quoting *Hoffmann-La Roche*, 493 U.S. at 174).

Likewise, complete uniformity in each and every aspect of employment is not required for conditional certification. *See Watson v. Travis Software Corp.*, No. H-07-4104, 2008 WL 5068806, at *5 (S.D. Tex. Nov. 21, 2008) ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated.") (citing cases); *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn., Apr. 10, 2008) (employer's assertions regarding differences among its call centers and the various job classifications of employees are more appropriately raised at the decertification stage of a collective action). Rather, the plaintiff need only establish "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Sidbury v. Dun & Bradstreet Emerging Bus. Corp.,* No. 1:19-cv-865-RP, 2020 WL 7011994, at *3 (W.D. Tex. Oct. 13, 2020) (quoting *West v. Phelps Dodge Ref. Corp.*, No. EP-07-CA-197-FM, 2009 WL 10700216, at *9 (W.D. Tex. Jan. 27, 2009)). Here, Plaintiffs easily meet this burden and notice to the proposed Collective is appropriate.

### d. Early Notice Protects Employees' Statutes of Limitations

The statute of limitations for FLSA violations is two years, extended to three years for willful violations. 29 U.S.C. §255(a). Accordingly, if notice is delayed, a great number of employees may lose their

claims due to nothing more than the passage of time. *See Blake*, 2013 WL 3753965, at *4; *Gaffers v. Kelly Servs.*, Inc., 2016 WL 8919156, at *2 (E.D. Mich. Oct. 13, 2016) ("[P]laintiffs will be irreparably harmed if discovery is halted and notice is not sent promptly to them, because the limitations period on their claims was not tolled by either the filing of the complaint or the conditional certification of the collective litigation); *Taylor v. Pittsburgh Mercy Health Sys.*, 2009 U.S. Dist. LEXIS 40080, *2 (W.D. Pa. May 11, 2009) ("time is of the essence for purposes of FLSA notice"); *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008) ("Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action, courts have concluded that the objectives to be served through a collective action justify the conditional certification of a class of putative plaintiffs early in a proceeding, typically before any significant discovery, upon an initial showing that the members of the class are similarly situated.").

The Supreme Court affirmed the importance of potential opt-in plaintiffs receiving timely notice of their potential claims:

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim … to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.

*Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988).

Allowing notice early in the case assures that later decisions are "informed, efficiently reached, and conclusive." *Id*.; *accord Labrie v. UPS Supply Chain Sols., Inc.*, No. 08-cv-3182, 2009 WL 723599, at *1 (N.D. Cal. Mar. 18, 2009) ("The FLSA requires the court to provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'"). These same policies counsel strongly in favor of authorizing early notice in this case. Thus, it is critical that notice is provided to similarly situated employees to provide them with opportunity to opt-in at the start of the action, as their claims are being reduced or extinguished by the passage of time.

15

Likewise, delays in resolving conditional certification motions make it more likely that documentary evidence may be lost or that contact information for the proposed FLSA Collective members could become stale, making it much harder to inform them of this action and their right to join. *See e.g. Holmes*, 2017 WL 1077987, at *3 ("if potential collective members are not promptly informed about this action, they could lose or dispose of documentary evidence (such as e-mails or hard copy documents) that could be useful to the prosecution of their claims.").

### 2. *Stage Two: The Certification/Decertification Stage*

The second stage, often called the "decertification stage," does not occur until after the collective group members have submitted their opt-in forms and the parties have concluded discovery. *Mooney*, 54 F.3d at 1214. The second stage eliminates the hypothetical inquiries that employers often press at the notice stage. ""At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the plaintiffs are similarly situated, the district court allows the representative action to proceed to trial. However, if the plaintiffs are not similarly situated, 'the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.' The original plaintiff then proceeds to trial on his individual claims." *Kelley*, 2020 WL 1659926, at *2 (quoting *Mooney*, 54 F.3d at 1214).

### C. The Facts in This Case Are Easily Distinguishable From Those Giving Rise to the Fifth Circuit's *Swales* Decision

In opposing this motion, Defendants are likely to rely heavily on the Fifth Circuit's recent decision in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). In short, *Swales* abandoned the traditional two-step process to conditional certification and held rigorous scrutiny should be applied from the onset. *Id*. at 442. However, the facts giving rise to the Fifth Circuit's rejection of the well-established two-stage certification approach are drastically dissimilar to the facts here. First, the case involved claims of independent contractor misclassification—a very fact intensive type of case. Second, when the district court in *Swales* was presented with a motion for notice and conditional certification, **the parties already had**

**engaged in substantial discovery**. In opposing the motion, the defendant, a trucking transportation company, presented evidence that the plaintiffs and potential opt-in plaintiffs, former and current truck drivers, were independent contractors and argued that the application of the "economic-realities test" for whether the plaintiffs were employees or independent contractors "would require a highly individualized inquiry" that would "counsel[ ] against certification." *Id.* at 438. The district court believed it could not consider evidence "related to the economic-realities test at the pre-notice stage because the test was a 'merits issue' to be dealt with after discovery was complete." *Id.* The court recognized that the plaintiffs may not ultimately be "similarly situated" because "each plaintiff would have to present different facts under the economic-realities test," but nonetheless conditionally certified a collective of "potentially thousands" of truck drivers. *Id.* The district court *sua sponte* certified its decision for interlocutory appeal. *Id.* at 439. On appeal, the Fifth Circuit held that the district court erred by failing to "consider the evidence relating to this threshold question in order to determine whether the economic-realities test could be applied on a collective basis." *Id.* at 442.

None of these facts are present here. First, Plaintiffs are filing the instant Motion only one month after filing their Complaint and no discovery has been completed. Second, it is highly improbable that Defendants will – or can – argue that the potential plaintiffs are independent contractors such that the Court would need to engage in any particularized analysis to determine a threshold question of whether each plaintiff is a covered employee in the first place. This is because Defendants considered and treated the individuals working for them and performing security officer job duties as employees as defined under FLSA. *See e.g.* Doc. 1-3, 1-4, 1-5 (withholding taxes). Third, unlike the district court in *Swales*, this Court can determine from the current record of plaintiffs' allegations and declarations whether they and potential plaintiffs are "similarly situated" for conditional certification purposes and whether to send notice of this action to potential opt-in plaintiffs. Fourth, courts around the country have repeatedly rejected *Swales*, recognizing the unique procedural posture of that case and distinguishing facts presented in it, and refused employers' requests to forgo the two-step conditional certification process. *See e.g.*, *In re Albertsons*, No. 21-2577, 2021

WL 4028428, at *2 (7th Cir. 2021) (holding that district court did not err in applying two-stage collective certification framework instead of *Swales*, as "district courts have 'wide discretion to manage collective actions' " (citation omitted)); *Santos v. E&R Servs., Inc*., No.: DLB-20-2737, 2021 WL 6073039, at *3-4 (D. Md. Dec. 23, 2021) (identifying the factual dissimilarities between *Swales* and those before the court and finding "that following the two-stage certification process here will promote efficient adjudication of claims and lower the costs of litigation for the plaintiffs."); *Mazariegos v. Pan 4 Am., LLC*, No.: DLB-20-2275, 2021 WL 5015751, at *4 (D. Md. Oct. 28, 2021) ("This Court declines the defendants' invitation to depart from the two-stage certification process"); *Thomas v. Maximus, Inc*, No. 3:21cv498 (DJN), 2022 WL 1482010, at *3 (E.D. Va. May 10, 2022) ("The Court declines Defendant's invitation to apply this standard and will follow the approach of a litany of other courts within the Fourth Circuit, which have done the same when presented with this issue.") (citing cases); *Branson v. All. Coal*, No. 4:19-CV-00155-JHM, 2021 WL 1550571, at *4 (W.D. Ky. Apr. 20, 2021) (refusing to follow *Swales*, because of the importance of the district court's role in overseeing the notice process); *Piazza v. Albertsons, LP*, No. 20-cv-03187, 2021 WL 365771, at *5 n.6 (N.D. Ill. Feb. 3, 2021) ("The Court declines New Albertsons' invitation to deviate from the well established process or standard to allow the parties to engage in extensive discovery based on *Swales*"); *Learing v. Anthem Companies, Inc*., No. 21-cv-2283 (KMM/JFD), 2022 WL 594378, at *4 (D. Minn. Feb. 28, 2022) ("The Court declines to apply *Swales*, as have other courts in the Eighth Circuit.") (citing cases); *McCoy v. Elkhart Products Corp.*, No. 5:20-cv-05176, 2021 WL 510626, *2 (W.D. Ark. Feb. 11, 2021) ("The Court will follow the historical, two-stage approach, which has proven to be an efficient means of resolution of this issue. Although the burden of proof is low at the first stage of the two-stage approach, it is not non-existent, and Defendant's complaint that the two-stage approach leads courts to grant conditional certification without reviewing if potential opt-in plaintiffs are similarly situated is unfounded."). As such, Defendants' reliance on *Swales* would be misplaced in the instant case.

18

D.    **Plaintiffs Satisfy the Lenient Standard for Conditional Certification**

Here, Plaintiffs meet their burden for conditional certification. In addition to the detailed Complaint, the named Plaintiffs and an Opt-in Plaintiff submitted detailed, sworn declarations and other evidence which confirms the following: (1) Plaintiffs and other employees who worked for Defendants and performed security officer job duties were subject to similar unlawful rules, procedures, requirements, and expectations in all material aspects of their employment; (2) the unlawful pay practices alleged by Plaintiffs are common and uniform for all employees performing security officer job duties in the Texas area; (3) the employees' unpaid time is substantial and not *de minimis*;[1] and (4) resolution of this lawsuit will rise or fall on the same legal questions, pay practices, and similar evidence for all employees who performed security officer job duties. (*See generally*, **Ex. C**, Richards Dec.; **Ex. D**, White Dec.; **Ex. E**, Brown Dec.).

These common policies and declarations are similar to showings that have been presented and accepted in other FLSA collective actions. *See e.g. Tolentino*, 716 F.Supp.2d at 651–52; *Zachary*, 2017 WL 1079374, at *4 ("In their declarations, opt-in Plaintiffs state that based upon their experience and observations working for Defendant, they understand other Processors were subject to the same pay policies and practices of not receiving overtime. At this stage, it is reasonable to infer that opt-in Plaintiffs had personal knowledge of the employment conditions of other Processors based on their own observations and experiences during their employment. *See Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 764 (N.D. Tex. 2013)."); *Anderson v. Minacs Grp. (USA) Inc.*, No. 16-13942, 2017 WL 1856276 (E.D. Mich. May 9, 2017) (authorizing notice to over 1,000 employees); *Serbay v. Dialog Direct, Inc.*, No. 16-12716, 2017 WL 163866 (E.D. Mich. Jan. 17, 2017) (authorizing notice to over 20,000 employees); *Gaffers v. Kelly Servs.*, 203 F. Supp. 3d 829 (E.D. Mich.

---

[1] This is to the extent that the *de minimis* doctrine remains a valid legal defense after the United States Supreme Court decision in *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014); *see also Peterson v. Nelnet Diversified Sols., LLC*, 15 F.4th 1033, 1049 (10th Cir. 2021) (granting partial summary judgment in favor of the plaintiffs on the issues of compensability and the inapplicability of the *de minimis* doctrine based on just 2 minutes of unpaid time per shift).

Aug. 24, 2016) (authorizing notice to over 7,000 employees); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14–cv–253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (authorizing notice to over 22,000 employees).

Additionally, the instant litigation has attracted several individuals to file a notice of consent to join, and the declarations submitted illustrate the Plaintiffs' belief that, if given the opportunity, other similarly situated employees would participate in the case. (**Ex. C**, Richards Dec. at ¶ 22; **Ex. D**, White Dec. at ¶ 26; **Ex. E**, Brown Dec. at ¶ 24). Therefore, to the extent that this Court requires the third element, Plaintiffs have met this requirement.

E.    **Plaintiffs Are Entitled to a List of FLSA Collective Members to Permit Dissemination of Notice Pursuant to § 216(b)**

If the Court grants conditional certification, it also has "managerial responsibility to oversee the joinder of additional parties to ensure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche*, 493 U.S. at 171. The names, addresses, phone numbers, and email addresses of affected employees are discoverable, and courts routinely order production of this information to carry out the notice process. *Id.* at 170; *Kitterman v. Wood Group PSN, Inc.*, No. 2:19-cv-233, 2020 WL 10897725, at *6 (S.D. Tex. July 24, 2020) (ordering production of names, last known addresses, email addresses, phone numbers, and dates of employment of putative class members); *Wesley v. Experian Info. Solutions, Inc.*, No. 4:18-cv-00005, 2018 WL 3105763, at *4 (E.D. Tex. June 25, 2018) (ordering production of names, last known addresses, and email addresses); *Leon v. Diversified Concrete LLC*, No. 15-6301, 2016 WL 2825073, at *6 (E.D. La. May 13, 2016) (ordering full names, dates of employment, and last known addresses).

Obtaining the full benefits of the FLSA depends "on employees receiving accurate and *timely* notice concerning the pendency of the collective action." *Hoffmann-La Roche*, 493 U.S. at 170 (emphasis added). Thus, the goal of the FLSA, and in turn, court-ordered notice, should be to achieve as many potential opt-ins to vindicate the purpose of the Act.

20

Plaintiffs' proposed Notice is attached as **Exhibit A**. Notice is a FLSA plaintiff's communication with his co-workers, and, thus, "a plaintiff should be allowed to use his preferred language in drafting the notice absent reasonable objections." *Reyes v. Quality Logging, Inc.*, 52 F.Supp.3d 849, 852 (S.D. Tex. 2014) (citing *Vargas v. Richardson Trident Co.,* 2010 WL 730155, at *11 (S.D. Tex. Feb. 22, 2010)); *Ratliff v. Pason Sys. USA Corp.*, 196 F.Supp.3d 699, 700 (S.D. Tex. 2016). That said, Plaintiffs' proposed Notice was fashioned after notices that were approved in other FLSA collective actions.[2] Hence, this Court should approve Plaintiffs' proposed Notice and permit Plaintiffs' counsel to circulate the Notice by U.S. Mail, email, and text message.

F.    **Notice Should be Sent by U.S. Mail, Email and Text Message**

Recognizing the reality of modern communication and its potential to advance the remedial goals of the FLSA, courts in the Fifth Circuit have found it appropriate to distribute notice by way of email in addition to mail. *Kitterman*, 2020 WL 10897725, at *6 (S.D. Tex. July 24, 2020); *Wesley*, 2018 WL 3105763, at *4; *Rosalez Funez v. E.M.S.P, LLC*, No. 16-1922, 2016 WL 4445828, at *4 (E.D. La. Aug. 24, 2016); *Dyson*, 308 F.R.D. at 518; *Jones*, 149 F.Supp.3d at 777.

Courts across the country, noting the dominant role of electronic communication, have also followed this trend. *See e.g Varghese v. JP Morgan Chase & Co.*, No. 14-cv-1718, 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) ("given the reality of communications today … email notice in addition to notice by first class mail is entirely appropriate"); *Evans v. Caregivers, Inc.*, 3:17-CV-0402, 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017) (noting that "courts within the Sixth Circuit have routinely approved dual notification through regular mail and email."); *Hussein v. Capital Bldg. Servs. Grp., Inc.*, F. Supp. 3d 1182, 1198 (D. Minn. 2015) (email notice "advances the remedial purpose of the FLSA by increasing the likelihood that all potential opt-

---

[2] *See Beattie et al v. TTEC Healthcare Solutions, Inc. et al*, No. 18-cv-03098-RM-NRN, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019); *Gaffers v. Kelly Servs.*, No. 16-cv-10128 (E.D. Mich. 2016); *Williams v. Sykes, et al.*, No. 13-cv-946 (D. Minn. 2013); *Stelmachers v. Maxim Healthcare Services, Inc.*, No. 13-cv-01062 (N.D. Ga. 2013); *Lawrence v. Maxim Healthcare Services, Inc.*, No. 12-cv-2600 (N.D. Ohio 2012).

in plaintiffs will receive notice"); *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608, 2015 WL 6152476, at *19 (N.D. Cal. Oct. 20, 2015) (approving notice via email and website posting, remarking that "communication through email is [now] the norm"); *Rapp v. HV Occupational Health Advisors of Am., LLC*, No. 20-cv-02043-PAB-KMT, 2021 WL 4426956, at *6 (D. Colo. Sept. 27, 2021) (permitting plaintiff to "send the Notice by First Class U.S. Mail and email to the last known address of each" putative class member"); *Cooper v. E. Coast Assemblers, Inc.*, No. 12–80995–CIV, 2013 WL 308880, at *4 (S.D. Fla. Jan. 25, 2013) ("Plaintiff's counsel may e-mail the Notice in addition to its mailing.").

In addition, given the importance and urgency of providing notice to class members of a pending FLSA case, Plaintiffs seek an order permitting a shortened notice via text message (**Exhibit B**) to any proposed FLSA Collective member for whom Defendants maintained a mobile number. Courts around the nation, including those within this Circuit, are becoming more inclined to do so. *See Cervantez v. TDT Consulting, LLC*, No. 3:18-cv-2547-S-BN, 2019 WL 3948355, at *10 (N.D. Tex. July 22, 2019) (allowing notice by text message); *Goss v. Tyler Traditions, Inc.*, No. 6:18-cv-423-JDK, 2019 WL 4935290, at *6 (E.D. Tex. July 22, 2019) (same); *Lopez v. Bird Elec. Enters., LLC*, No. MO:18-cv-0231-DC-RCG, 2019 WL 4087578, at *2 (W.D. Tex. June 28, 2019) (same); *Qazi v. Stage Stores, Inc.*, No. 4:18-cv-780, 2019 WL 2523564, at *3 (S.D. Tex. June 18, 2019) (same); *Defrese-Reese v. Healthy Minds, Inc.*, No. CV 18-1134, 2018 WL 6928920, at *4 (W.D. La. Dec. 19, 2018) ("Courts in the Fifth Circuit have approved the use of text message to facilitate notice to potential class members.") (collecting cases); *see also Irvine v. Destination Wild Dunes Mgmt.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."); *Torres v. Vitale*, 2020 U.S. Dist. LEXIS 204594, *17 (W.D. Mich. Sept. 30, 2020) (granting conditional certification and approving notice via text message); *Pogue v. Chisholm Energy Operating, LLC*, No. 2:20-cv-00580-KWR-KK, 2021 WL 5861184, at *9 (D.N.M. Dec. 10,

22

2021) (finding "that mail, email, and text message are appropriate methods to distribute the notice"); *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017) ("Further discussion regarding whether notice by email and text should be allowed [is] pointless because the law is on Plaintiff's side. Courts have recognized that notice by email and text is reasonable in today's mobile society and that these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved.").

G.    **The Court Should Grant a Sixty (60) Day Opt-In Period to Allow Employees to Join This Litigation and For Reminder Notice to be Sent Thirty (30) Days Following Notice to Those Who Have Not Yet Responded**

Plaintiffs request an opt-in period of sixty (60) days to give employees a reasonable opportunity to join the litigation and to permit skip tracing and re-mailing to any employees who may have relocated. Sixty days is reasonable and is far shorter than other opt-in periods approved by this Court. *See e.g.*, *Wesley*, 2018 WL 3105763, at *4 (approving 90-day opt-in period); *Zachary*, 2017 WL 1079374, at *4 (approving 60-day opt-in period).

Finally, Plaintiffs request that the Court allow them to issue one reminder email thirty (30) days into the notice period to those who have not yet responded to the initial opt-in notice. Courts commonly approve reminders, particularly given the fact that the Covid-19 pandemic has created barriers to communication with class members. *See Dickensheets v. Arc Marine, LLC*, 440 F.Supp.3d 670, 673 (S.D. Tex. 2020) (noting that "the benefits to be gained by sending a reminder notice far outweigh any potential disadvantages"); *Wingo*, 2018 WL 6334312, *11 (finding that a reminder notice is a reasonable way to ensure that potential class members receive notice and, if they choose to do so, file a timely opt-in form); *Page v. Crescent Directional Drilling, L.P.*, No. 5:15-cv-193-RP, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015) (same); *Pogue*, 2021 WL 5861184, at *9; *Robertson v. REP Processing, LLC*, No. 19-cv-02910-PAB-NYW, 2021 WL 4255027, at

*4 (D. Colo. Sept. 16, 2021) (finding a reminder warranted because plaintiff argued that the pandemic has created barriers to communication with collective members).

## IV.    CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), enter an order granting the relief requested herein.

Dated: September 27, 2022                  Respectfully Submitted,

                                           /s/ Jesse L. Young
                                           Jesse L. Young (admitted *pro hac vice*)
                                           Alana A. Karbal (admitted *pro hac vice*)
                                           SOMMERS SCHWARTZ, P.C.
                                           One Towne Square, 17th Floor
                                           Southfield, Michigan 48076
                                           Telephone: 248-355-0300
                                           jyoung@sommerspc.com
                                           akarbal@sommerspc.com

                                           Robert W. Buchholz (Co-Attorney in Charge)
                                           Texas Bar No. 03290600
                                           Robert W. Buchholz, P.C.
                                           5220 Spring Valley Rd., Ste. 618
                                           Dallas, Texas 75254-2431
                                           214.754.5500
                                           bob@attorneybob.com

                                           *Counsel for Plaintiffs and the FLSA Collective*

### CERTIFICATE OF SERVICE

I certify that on September 27, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                                           /s/ Jesse L. Young
                                           jyoung@sommerspc.com